**SIGNED this 01st day of February, 2011.**

_____
**LEIF M. CLARK**
**UNITED STATES BANKRUPTCY JUDGE**
_____

# United States Bankruptcy Court

Western District of Texas
San Antonio Division

| | |
|---|---|
| In re | Bankr. Case No. |
| Richard L. Horne | 10-50859-C |
| _Debtor_ | Chapter 7 |
| Jeff Kleindienst & Kathleen Wisely | |
| _Plaintiffs_ | |
| v. | Adv. No. 10-5063-C |
| Richard L. Horne | |
| _Defendant_ | |

## Decision Denying Cross Motions for Summary Judgment

Jeff Kleindienst and Kathleen Wisely (the "Plaintiffs") filed a complaint against the Debtor on June 7, 2010. The complaint objects to the dischargeability of the debtor's debt to the Plaintiffs and, alternatively, objects to the Debtor's discharge. The underlying facts as alleged in the complaint are that the Plaintiffs sued the debtor in state court on June 26, 2006, regarding the defendant's alleged failure to construct the home properly.

The Plaintiffs alleged that the Debtor failed to comply with minimum building standards applicable to residential construction under the Texas Residential Construction Commission Act. The Plaintiffs also alleged that the Debtor violated section 17.50(a)(1) of the Texas Business and Commerce Code (the "Texas Deceptive Trade Practices— Consumer Protection Act" or the "DTPA") by engaging in the use or employment of a false, misleading or deceptive act or practice that is specifically enumerated in a subdivision of section 17.46(b) of the DTPA. (See Compl. at p. 3).

The Plaintiffs' case was referred to arbitration, and, on December 12, 2007, an arbitration award was entered in favor of the Plaintiffs, awarding them various damages totaling $205,191.25. The arbitrator found that the Debtor and his construction company (Quail Run Construction, Inc.) made knowing and intentional misrepresentations in violation of the DTPA (*See* Arb. Award, Ex. 3 to MSJ.). Confusingly, the arbitrator also expressly found "no finding of fraud." (*see Id.*) On January 22, 2008 the arbitration award was reduced to a final judgment by a state district court.

The Plaintiffs' current complaint alleges that the Debtor's debt to them, arising from this state court judgment, is non-dischargeable under sections 523(a)(2)(A), 523(a)(4) and 523(a)(6) of the Bankruptcy Code. Plaintiffs claim, in general, that the Debtor and his wife (who is also a director of the Debtor's construction company) engaged in various fraudulent transfers in an effort to hide the Debtor's assets and to prevent the Plaintiffs from being able to collect on their judgment. Alternatively, the Plaintiffs allege that the Debtor should be denied a discharge for engaging in conduct that violates that sections 727(a)(2)(A), (a)(2)(B), (a)(3) and (a)(7) of the Bankruptcy Code.

The Plaintiffs' motion for summary judgment is based on an entirely different argument from that put forth in the complaint. In the complaint, the Plaintiffs alleged, in part, that the Debtor and his wife had engaged in various fraudulent transfers, and that those transfers somehow constituted conduct that would preclude the discharge of the Debtor's debt to the Plaintiffs under sections 523(a)(2)(A), (a)(4) and (a)(6) of the Code. The Plaintiffs' motion for summary judgment makes more sense. There the Plaintiffs argue that they should be granted partial summary judgment on their section 523(a) claims under the theory of collateral estoppel arising from the arbitration of the state court suit. It is unclear whether the Plaintiffs seek partial summary judgment on just their 523(a)(4) claim, as the first paragraph of their motion for summary judgment suggests, or on all of their 523(a) claims (which are mentioned later in the motion at pages 3 and 8).  The Debtor's response addresses all three sections, however.

The Plaintiffs maintain that the arbitration award (since reduced to a final judgment) establishes collateral estoppel on the issue of whether the Debtor made knowing and intentional misrepresentations in violation of the TDPA. The plaintiffs argue that the arbitrator's finding establishes that the Debtor's debt to the Plaintiffs "is non-dischargeable under sections 523(a)(4) and 523(a)(6) of the Code, as the Judgment was a result from the knowing and/or intentional misrepresentations in violation of the Texas Deceptive Trade Practices Act (the "DTPA") made by Richard Horne of a willful and malicious injury to the Judgment Creditor." (MSJ, p. 3.)

Initially, it appears that the Plaintiffs have misread and misapplied section 523 to their allegations. Section 523(a)(4) applies to fraud or defalcation while acting in a fiduciary capacity. The Plaintiffs have not alleged the existence of any fiduciary

relationship between the Debtor and the Plaintiffs in either their complaint or their motion for summary judgment. It appears as though the Plaintiffs meant to assert non-dischargeability claims under sections 523(a)(2)(A) and (a)(6). However, as all three sections are referenced in the complaint, all three will be discussed here.

The Plaintiffs collateral estoppel argument asserts that "[a] creditor in a proceeding to determine the nondischargeability of a debt under section 523(a) may invoke the doctrine of collateral estoppel to bar relitigation of factual and legal issues that were actually litigated and determined in a prior state court proceeding."  (MSJ, p. 6.) The Plaintiffs then lay out the Fifth Circuit test for collateral estoppel, asserting that the arbitration proceedings satisfy that test with regard to the issue of the Debtor's violation of the DTPA through knowing and intentional misrepresentation. The Plaintiffs then argue that the arbitrator's finding that the Debtor had violated the DTPA establishes, as a matter of law, that the debt is non-dischargeable under section 523(a)(2)(A). (MSJ, p. 8-9.) Although the Plaintiffs quote section 523(a)(2) in their argument section (MSJ, p. 8), the Plaintiffs again refer only to section 523(a)(4) in their prayer for relief (MSJ, p. 10.). The Plaintiffs do not mention section 523(a)(6) in their argument or prayer for relief. That section is only mentioned on page 3 of their motion, where the Plaintiffs lay out their general request for a finding of non-dischargeability under sections 523(a)(4) and (a)(6).

The Debtor responded to the Plaintiffs' motion for summary judgment, denying that the state court litigation and the arbitration findings establish collateral estoppel for purposes of determining dischargeability under sections 523(a)(4) and (a)(6) of the Code. The Debtor argues that "a violation of the DTPA does not necessarily constitute

fraud or defalcation while acting in a fiduciary capacity, or willful and malicious injury by the Debtor to another entity or to the property of another entity." (Resp., p. 2.) The Debtor further argues that the arbitrator's finding of "no finding of fraud" precludes the Plaintiffs' collateral estoppel argument with regard to their section 523(a)(2)(A) non-dischargeability claim. (Id.) The Debtor further argues that "if the property or services were obtained before the making of any false representation, subsequent misrepresentations will have no effect on dischargeability." (Id.) The Debtor argues that a violation of the DTPA does not conclusively establish non-dischargeability under either section 523(a)(2), (a)(4) or (a)(6). The Debtor maintains that, 1) with respect to 523(a)(2), the arbitrator specifically found no fraud; 2) with respect to 523(a)(4) there was no fiduciary relationship demonstrated between the Debtor and the Plaintiffs; and 3) with respect to 523(a)(6), there was no "willful" injury to the Plaintiffs' property as that term has been interpreted in the Fifth Circuit.

The Debtor filed his own motion for partial summary judgment. The Debtor argues that, under principles of collateral estoppel, the facts pled and proven in the state court litigation and the findings of the arbitrator establish that the Debtor did *not* commit fraud. Thus, the Debtor requests partial summary judgment in his favor with regard to the Plaintiffs' 523(a)(2) claim.

## Legal Analysis

1. *Summary Judgment Standard*

Summary judgment is appropriate "if the pleadings, the discovery, and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."

FED.R.CIV.P. 56. Federal Rule of Bankruptcy Procedure 7056 incorporates Rule 56 in adversary proceedings. *See* FED.R.BANKR.P. 7056. The moving party bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005). "An issue is material if its resolution could affect the outcome of the action." *Weeks Marine, Inc. v. Fireman's Fund Ins. Co.*, 340 F. 3d 233, 235 (5th Cir. 2003) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). If the moving party fails to meet its initial burden, the motion for summary judgment must be denied, regardless of the nonmovant's response. *Baton Rouge Oil & Chem. Workers Union v. ExxonMobil Corp.*, 289 F.3d 373, 375 (5th Cir. 2002). When the moving party has met its Rule 56(c) burden, the nonmoving party cannot survive a motion for summary judgment by resting on the mere allegations of its pleadings; the nonmovant must identify specific evidence in the record and articulate the manner in which that evidence supports that party's claim. *Johnson v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force*, 379 F.3d 293, 304 (5th Cir. 2004). The nonmovant must do more than show that there is some metaphysical doubt as to the material facts. *Armstrong v. Am. Home Shield Corp.*, 333 F.3d 566, 568 (5th Cir. 2003). In deciding a summary judgment motion, the court draws all reasonable inferences in the light most favorable to the nonmoving party. Anderson, 477 U.S. at 255; *Calbillo v. Cavender Oldsmobile, Inc.*, 288 F.3d 721, 725 (5th Cir. 2002).

If the movant bears the burden of proof on an issue at trial, a successful motion for summary judgment must present evidence that would entitle the movant to judgment

at trial. *Malacara v. Garber*, 353 F.3d 393, 403 (5th Cir. 2003). Upon an adequate showing, the burden shifts to the non-moving party to establish a genuine issue of material fact. *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009). The nonmoving party has a duty to respond with specific evidence demonstrating a disputed fact issue. *Celotex Corp.*, 477 U.S. at 324. Here, the Plaintiffs bear the ultimate burden of demonstrating that their claim is non-dischargeable. *See Grogan v. Garner,* 498 U.S. 279, 291 (1991) (holding that the creditor bears the burden of proving an exception to discharge under section 523(a) by a preponderance of the evidence). Thus, the Plaintiffs, as the parties moving for summary judgment, bear the burden of proving that they would be entitled to judgment at a trial on the merits, and that there are no material issues of fact as to any of the elements of their case.

2. *Collateral Estoppel*

When the judgment from which the moving party seeks to apply collateral estoppel was entered in state court, federal courts will look to that state's law on issue preclusion. A prior state court judgment will be given preclusive effect if "(1) the law of the state where the judgment was rendered would give preclusive effect to the judgment and (2) under federal law, no exception to the full faith and credit statute, 28 U.S.C. § 17.38, applies." *Viking Dynamics, Ltd. v. O'Neill*, 260 B.R. 122, 126 (Bank. E.D. Tex. 2001) (citing *Crain v. Limbaugh (In re Limbaugh)*, 155 B.R. 952, 956 (Bankr. N.D. Tex. 1993)). In Texas, "a party is collaterally estopped from raising an issue when: (1) the facts sought to be litigated in the second case were fully and fairly litigated in the first; (2) those facts were essential to the prior judgment; and (3) the parties were cast as adversaries in the first case." *Pancake v. Reliance Ins. Co. (In re Pancake)*, 1997 U.S.

App. LEXIS 12991, at *3 (5th Cir. 1997). This state law test is different from the federal common law test for application of collateral estoppel. As discussed below, in the context of non-dischargeability claims, the federal test for collateral estoppel must also be considered. The federal test

> require[s] the party invoking estoppel to establish that '(1) the issue at stake must be identical to the one involved in the prior action; (2) the issue must have been actually litigated in the prior action; and (3) the determination of the issue in the prior action must have been a necessary part of the judgment in that earlier action.' RecoverEdge, 44 F.3d at 1290 (citing Sheerin v. Davis (In re Davis), 3 F.3d 113, 114 (5th Cir. 1993)). The key difference between the two is the requirement that the issue be identical for federal collateral estoppel.

*Kesselring v. Doyal (In re Doyal)*, 2010 Bankr. LEXIS 741, at *7-8 (Bankr. W.D. Tex. Mar. 4, 2010). In essence, "the doctrine of issue preclusion, or collateral estoppel, 'bars relitigation of any 'ultimate issue' of fact actually litigation and essential to the judgment in a prior suit, regardless of whether the second suit is based upon the same cause of action.'" *Ragupathi v. Bairrington (In re Bairrington)*, 183 B.R. 754, 756 (Bankr. W.D. Tex. 1995) (quoting *Daniels v. The Equitable Life Assurance Society of the U.S.*, 35 F.3d 210, 212 (5th Cir. 1994)). Here, as discussed below, the claims in the two proceedings (i.e. violation of the DTPA and non-dischargeability under section 523(a)) are not identical, but the facts underlying the Plaintiffs' DTPA claims form the basis of the Plaintiffs' non-dischargeability claims, thus implicating Texas' law of issue preclusion. "The subject matter of the two suits may be different as long as the requirements for collateral estoppel are met." *Id.* (citing *Eagle Properties v. Scharbauer*, 807 S.W.2d 714, 721 (Tex. 1990)).

A debtor in a proceeding to determine the non-dischargeability of a debt under section 523(a) may invoke the doctrine of collateral estoppel to bar re-litigation of factual

and legal issues that were actually litigated and determined in a prior state court proceeding. *See Grogan v. Garner*, 498 U.S. at 285, n. 11 ("We now clarify that collateral estoppel principles do indeed apply in discharge exception proceedings pursuant to § 523(a)."); *Recoveredge, L.P. v. Pentecost*, 44 F.3d 1284, 1295 (5th Cir. 1995) (stating that "it is well settled that state judgments for damages and/or equitable relief based on fraud and related causes of action can have collateral estoppel effect in subsequent bankruptcy proceedings to determine dischargeability under § 523(a)). The failure to present the trial record to the bankruptcy court "is not a *per se* bar to the application of issue preclusion[.]" *Sheerin v. Davis (In re Davis)*, 3 F.3d 113, 115 (5th Cir. 1993). But the evidence before the bankruptcy court must be sufficient to allow the court to determine whether the issue was "actually litigated." *See Arendondo v. Thomas (In re Thomas)*, 2005 Bankr. LEXIS 284, at *10 (Bankr. N.D. Tex. Feb. 23, 2005) (noting that, while a trial record is not always required, "[t]he record must, however, provide a sufficient basis upon which the bankruptcy court may determine that the issue to be decided was actually litigated and necessarily decided in state court"). *See also Davis*, 3 F.3d at 115 (allowing collateral estoppel to be used despite absence of record of prior proceedings because other evidence of the proceeding, including the jury charge and the opinion, was available).

Here, the parties both contend that collateral estoppel is applicable to the Plaintiffs' 523(a) claims. (See Pl. MSJ, p. 6-7; Def. MSJ, p. 506.) Regarding the second element of issue preclusion in Texas, the resolution of the DTPA issue was a necessary part of the final judgment—indeed, the arbitrator specifically found that the Debtor had "made knowing and/or intentional misrepresentations in violation of the DTPA."

Regarding the third element, it is clear that the parties were adversaries in the arbitration proceeding. Regarding the first element—whether the facts sought to be litigated in the second case were fully and fairly litigated in the first—courts within the Fifth Circuit will deem an issue to have been "actually litigated" if the prior court conducted a hearing at which the parties appeared and gave evidence. *See Raspanti v. Keaty (In re Keaty)*, 397 F.3d 264, 272 (5th Cir. 2005) ("The requirement that an issue be 'actually litigated' for collateral estoppel purposes simply requires that the issue is raised, contested by the parties, submitted for determination by the court, and determined."); *James Talcott, Inc. v. Allahabad Bank, Ltd.*, 444 F.2d 451, 459-460 (5th Cir. 1971) (stating that "where a question of fact is put in issue by the pleadings, and is submitted to the jury or other trier of facts for its determination, and is determined, that question of fact has been 'actually litigated.'") (citing RESTATEMENT OF JUDGMENTS § 68, comment (c) (1942)); *Viking Dynamics, Ltd. v. O'Neill (In re O'Neill)*, 260 B.R. 122, 127 (Bankr. E.D. Tex. 2001) (finding that collateral estoppel was appropriate in connection with plaintiff's non-dischargeability claim because Texas law would give preclusive effect to the arbitration award at issue where the arbitrator had conducted a hearing at which the parties had appeared and given evidence); *114 Kimbell Square, Ltd. v. Ritter*, 2007 U.S. Dist. LEXIS 41811, at *17-18 (N.D. Tex. June 8, 2007) (concluding that collateral estoppel precluded the retrial of plaintiff's fraud claim in the bankruptcy court because it was clear from the arbitration award that the arbitrator and considered and denied the fraud claim).

Here, it is clear that the parties appeared and presented evidence on the facts underlying the Plaintiffs' DTPA claim. Furthermore, the arbitration award shows that the

arbitrator considered the Plaintiffs' DTPA claim in light of that evidence and ultimately found in favor of the Plaintiffs. It bears remembering that under Texas' law of collateral estoppel the issues in the two proceedings need not be identical. Rather, the relevant consideration is whether the underlying facts in the second proceeding were fully and fairly litigated in the first. *See Doyal*, 2010 Bankr. LEXIS 741, at *8. Collateral estoppel may be applied here to conclusively establish that the Debtor violated the DTPA. The next question thus becomes whether, as a matter of law, the Debtor's violation of the DTPA renders his debt non-dischargeable under section 523(a).

While under Texas' law of issue preclusion the issues in the two suits need not be identical, *see id.*, when it comes to applying issue preclusion in the context of non-dischargeability claims, federal law requires bankruptcy courts to compare the elements of the state law claim to the elements of the 523(a) non-dischargeability claim to determine whether they require proof of the same facts. In other words, once a party has satisfied the applicable state law test for issue preclusion, bankruptcy courts must apply a "federal test" whereby the bankruptcy court "'examine[s] the judgment rendered in the prior proceeding, together with the subsidiary facts actually litigated and necessarily decided, to determine whether the record contain[s] sufficiently detailed facts and findings to supply each of the elements of a § 523(a) claim.'" *Pollock v. Marx (In re Marx)*, 171 B.R. 218, 223 (Bankr. N.D. Tex. 1994) (qouting *Crain v. Limbaugh (In re Limbaugh)*, 155 Bankr. 952, 956 (Bankr. N.D. Tex. 1993)); *see also Thomas*, 2005 Bankr. LEXIS 284, at *10 ("Issue preclusion will prevent a bankruptcy court from determining dischargeability issues for itself only if 'the first court has made specific, subordinate, factual findings on the identical dischargeability issue in question … and

the facts supporting the court's findings are discernible from that court's record.'") (quoting *In re Dennis*, 25 F.3d 274, 278 (5th Cir. 1994)); *FTC v. Abeyta (In re Abeyta)*, 387 B.R. 846, 851-852 (Bankr. D.N.M. 2008) (noting that "[s]ummary judgment on a non-dischargeability claim may [] be granted based on a prior judgment obtained outside of bankruptcy provided that the prior judgment establishes all elements necessary to the determination of non-dischargeability under the Bankruptcy Code").

Accordingly, the following discussion addresses the elements required for each of the Plaintiffs' 523(a) claims as well as whether the arbitrator's finding that the Debtor "made knowing and/or intentional misrepresentations in violation of the DTPA," together with his finding of "no finding of fraud," satisfies those elements.

3. *Section 523(a)(2)*

The Plaintiffs maintain that the arbitrator's finding that the Debtor "made knowing and/or intentional misrepresentations in violation of the DTPA" also satisfies the elements of a § 523(a)(2)(A) claim for non-dischargeability, entitling the Plaintiffs to summary judgment on this issue. The Debtor, on the other hand, asserts that a violation of the DTPA does not automatically make the debt non-dischargeable under section 523 (a)(2)(A). The Debtor adds that the arbitrator's finding of "no finding of fraud" affirmatively *precludes* a finding that the Plaintiffs are entitled to summary judgment on their § 523(a)(2)(A) claim, and actually entitles the Debtor to summary judgment on this issue.

Where, as here, the evidence before the court does not include a trial record or detailed findings of fact by the trier of fact,

> [t]he only way that this court could possibly hold that any factual issue
> decided in the prior state court proceeding precludes [the debtor] from

12

litigating the dischargeability complaint is if this court could find that a particular factual issue necessary to a finding of nondischargeability was also necessary to the state court judge's ruling.

*Kaner v. Wheeler (In re Wheeler)*, 2003 Bankr. LEXIS 1690, at *7 (Bankr. N.D. Tex. Dec. 16, 2003); *see also O'Brien v. Zangara*, 217 B.R. 26, 32 (Bankr. E.D.N.Y. 1998) (quoting *Universal American Barge Corp. v. J-Chem, Inc.*, 946 F.2d 1131, 1137 (5th Cir. 1991) and stating that, with regard to arbitration awards, "the absence of written findings and reasons may make preclusion impossible 'unless necessarily implied from the nature of the claim and award'"). The Debtor points out that the Plaintiffs have failed to cite any case law in support of their argument that a DTPA violation necessarily satisfies the requirements for non-dischargeability under 523(a)(2)(A).

Bankruptcy courts in Texas have, in fact, addressed this issue before.

When examining whether the requisite elements of the Plaintiffs' 523(a)(2)(A) claim have been satisfied for purposes of applying collateral estoppel principles to the arbitrator's findings, it is helpful to first lay out the standards for a 523(a)(2)(A) claim. A debt will be found non-dischargeable under section 523(a)(2)(A) if it arose from any debt for money, property, services … to the extent obtained by false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition. 11 U.S.C. § 523(a)(2)(A). The Fifth Circuit has recently reiterated that "[a] creditor must prove the debtor's intent to deceive in order to obtain a non-dischargeability judgment under [] § 523(a)(2)(A)." *Friendly Fin. Service - Eastgate v. Dorsey (In re Dorsey)*, 505 F.3d 395, 399 (5th Cir. 2007). A section 523(a)(2)(A) cause of action for fraud will exist under § 523(a)(2)(A) when a debtor makes promises of current or future action which, at the time they were made, he had no intention of fulfilling.  In order to succeed on his legal theory, the objecting party must prove that: (1) the debtor made representations; (2) at the time they were made the debtor knew they were false; (3) the debtor made the representations with the intention and purpose to deceive the creditor; (4) the creditor relied on such representations; and (5) the creditor sustained losses as a proximate result of the representations.

*Bairrington*, 183 B.R. at 757 (citing *In re Bercier*, 934 F.2d 689 (5th Cir. 1991)). To establish "false pretenses" or "false representations" under section 523(a)(2)(A) "the creditor must show '(1) [a] knowing and fraudulent falsehood [ ], (2) describing past or current facts, (3) that [was] relied upon by the other party[ ].[']" *Jacobson v. Ormsby (In re Jacobson)*, 2007 U.S. App. LEXIS 17844, at *5 (5th Cir. July 26, 2007). In turn, for a debtor's representation to be deemed false, a creditor must satisfy the test for fraud laid out above. *See Gen. Elec. Capital Corp. v. Acosta (In re Acosta)*, 406 F.3d 367, 372 (5th Cir. 2005). The addition of "actual fraud" to section 523(a)(2)(A) in 1978 did not change the existing case law requiring a creditor to show actual or positive fraud; rather it was merely meant to clarify existing case law on the limited scope of the fraud exception to discharge. *See Recoveredge, LP v. Pentecost*, 44 F.3d 1284, 1293, n. 16 (citing the discussion in 3 COLLIER ON BANKRUPTCY, ¶ 523.08[5] at 523-58 regarding the addition of "actual fraud" to section 523(a)(2)(A)). Finally, the failure to disclose a material fact when one has a duty to do so is sufficient to establish non-dischargeability for fraud under section 523(a)(2)(A). *In re McMullen*, 2004 Bankr. LEXIS 2558, at *16-17 (Bankr. N.D. Tex. July 15, 2004) ("A 'finding of fraud does not require an affirmative statement … [it] may be predicated on a failure to disclose [a] material fact … [C]ourts have overwhelmingly held that a debtor's silence regarding material fact can constitute a false representation actionable under section 523(a)(2)(A).") (*quoting Wolstein v. Docteroff (In re Docteroff*), 133 F.3d 210, 216 (3d Cir. 1997)).

In sum, to establish non-dischargeability under section 523(a)(2)(A), a creditor must show actual fraud as opposed to merely constructive fraud. In other words, § 523 (a)(2)(A) excepts from discharge "debts obtained by frauds involving 'moral turpitude or

intentional wrong, and any misrepresentations must be knowingly and fraudulently made.'" *In re Acosta*, 406 F.3d at 372 (citing *In re Martin*, 963 F.2d 809, 813 (5th Cir. 1992)). The bad intent "may be inferred from 'reckless disregard for the truth or falsity of a statement combined with the sheer magnitude of the resultant misrepresentation.'" *Id.* (citing *In re Norris*, 70 F.3d 27, 30 n.12 (5th Cir. 1995), citing *In re Miller*, 39 F.3d 301, 305 (11th Cir. 1994).). "Nevertheless, an honest belief, even if unreasonable, that a representation is true and that the speaker has information to justify it does not amount to an intent to deceive... Thus, a 'dumb but honest' defendant does not have scienter." Id. (citations omitted).

Plaintiffs maintain that their allegations of fraud in their state court complaint, together with the arbitrator's finding that the Debtor violated the DTPA through knowing and/or intentional misrepresentations, satisfies the requirements of section 523(a)(2)(A). (Pl. MSJ, pp. 6-7.)  Plaintiffs' state court complaint alleged a violation of section 17.50(a) (1) of the DTPA.  That section provides that:

A consumer may maintain an action where any of the following constitute a producing cause of economic damages or damages for mental anguish:
    (1) the use or employment by any person of a false, misleading, or deceptive act or practice that is:
      (A) specifically enumerated in a subdivision of Subsection (b) of Section
                17.46 of this subchapter; and
      (B) relied on by a consumer to the consumer's detriment[.]

TEX. BUS. & COM. CODE § 17.50. To prevail on a DTPA claim,

> a plaintiff must show that (1) the plaintiff was a consumer; (2) the defendant committed, among other things, a 'laundry list' violation under DTPA § 17.46(b) on which the plaintiff detrimentally relied or any unconscionable action or course of action; and (3) the wrongful act was a producing cause of the plaintiff's economic or mental-anguish damages.

Thomas, 2005 Bankr. LEXIS 284, at *14-15. In their state court complaint the Plaintiffs alleged seven separate violations of subsection (b) of section 17.46 (which lays out the so-called "laundry list" violations). Specifically, the Plaintiffs alleged violations of the following subsections: (2), (3), (5), (7), (12), (20) and (24). (See Ex. 1 to Pl.'s MSJ, pp. 5-6.)  Section 17.50(b) provides for enhanced damages (beyond economic damages) if the trier of fact finds that the acts complained of under section 17.50(a) were committed either knowingly or intentionally. Although the Plaintiffs seem to also rely on their common law fraud allegations (found in their state court complaint) for purposes of their collateral estoppel argument here, the arbitrator made no finding of common law fraud. Rather, the arbitrator found only a knowing and/or intentional violation of the DTPA. Accordingly, we need only address whether the elements required for that finding would also satisfy a finding of non-dischargeability under section 523(a)(2)(A).

The bankruptcy court for the Western District of Texas addressed this very issue in Bairrington, 183 B.R. at 759 (Kelly, B.J.). There, the plaintiff had argued that the state court's finding that the defendant had committed various laundry list DTPA violations should, under principles of collateral estoppel, entitle the plaintiff to summary judgment on its 523(a) non-dischargeability claims. *Id*. at 755-56. The particular laundry list violations asserted in the state court action (subsections (5) and (7) of section 17.46(b)) did not require proof that the defendant had made the misrepresentations intentionally or knowingly. *Id*. at 759 (citing Texas case law). The court found that the elements of the § 523(a)(2)(A) non-dischargeability claim were not the same as the elements of the plaintiff's asserted DTPA violations. *Id*. at 760. Further, the court noted that, under Texas law, a knowing violation of the DTPA required proof of elements that differed from those

required for fraud. *Id.* (citing *Natland Corp. v. Banker's Port, Inc.*, 865 S.W.2d 52 (Tex. App.—Corpus Cristi 1993, writ denied)). Thus, the state court's findings that the defendant had knowingly committed various violations of the DTPA could not be used, under collateral estoppel principles, to mandate a finding of non-dischargeability under section 523(a)(2)(A). *Id.* Similarly, in *Thomas*, the bankruptcy court for the Northern District of Texas found that a plaintiff's state court judgment finding violations of subsections 2, 5, 12 and 24 of the DTPA, section 17.46(b) did not preclude the debtor from later litigating dischargeability under section 523(a)(2)(A) in the bankruptcy court. 2005 Bankr. LEXIS 284, at *5. The court noted that "intent to make a misrepresentation" was not a necessary element of a DTPA claim, though it is a necessary element to a section 523(a)(2)(A) action. *Id.* at *12-15. Because the "state court record [did] not include a finding of false representation with intent to deceive the plaintiffs," the judgment did not establish "that the state court based its DTPA judgment on elements of fraud required by § 523(a)(2)(A)." *Id.* at *15-16.

Here, the arbitration award does not state which particular laundry list violations the Debtor committed. Further, it only makes the conclusory observation that the Debtor "made knowing and/or intentional misrepresentations." In short, because the DTPA standards for "knowingly" and "intentionally" are different, the arbitration award (which the state court judgment incorporated) is insufficient to bar litigation of the elements of section 523(a)(2)(A). Had the arbitrator found simply a *knowing* violation, that finding would not have been sufficient for collateral estoppel purposes. On the other hand, had the arbitrator found an *intentional* violation, without qualification, that finding might have been sufficient for application of collateral estoppel. *See, e..g., Wallace v. Davis (In re*

*Davis*), 377 B.R. 827 (Bankr. E.D. Tex. 2007) (state court judgment finding intentional violations of subsections 7, 12 and 23 of section 17.46(b) held sufficient to establish collateral estoppel because the state court had found, *inter alia*, an "intent to deceive"); *see also Bennett v. Smith (In re Smith)*, 2006 Bankr. LEXIS 3196, at *42-44 (Bankr. M.D.N.C. Nov. 16, 2006) (finding that a violation of North Carolina's Unfair Trade Practices Act did not render debt non-dischargeable under section 523(a)(2)(A) because the prior court had not made any finding of intent to deceive in connection with the UTPA claim); *Floars v. Marshburn (In re Braswell)*, 2009 Bankr. LEXIS 1670, at *4-5 (Bankr. E.D.N.C. June 4, 2009) (finding that the superior court's conclusion that the debtor had willfully and intentionally engaged in unfair and deceptive trade practices established that the debt arising therefrom was non-dischargeable under section 523(a)(2)(A)).

Because the language of the arbitration award did not distinguish between the Debtor's knowing misrepresenttions and his intentional misrepresentations, it is impossible to tell whether the facts as found by the arbitrator are sufficient to establish non-dischargeability under section 523(a)(2)(A). *See Wheeler*, 2003 Bankr. LEXIS 1690, at *7-8. Accordingly, collateral estoppel cannot be applied to the Plaintiff's 523(a)(2)(A) claim. Summary judgment in the Plaintiffs' favor on this count is therefore inappropriate.

Summary judgment in the Debtor's favor is also inappropriate because the award could have been based on a finding of intentional misrepresentation—it does not explicitly provide otherwise. Because there is no trial record and no detailed findings of fact to which this court could look for guidance, there is an insufficient basis in the state

record to permit this court to bar litigation of either position (the Plaintiff's or the Defendants') with respect to the § 523(a)(2)(A) cause of action. Both the Plaintiffs' motions and the Defendant's motion for summary judgment as to the § 523(a)(2)(A) action are denied.

4. *Section 523(a)(4) and (a)(6)*

The Plaintiffs' argument that their judgment for DTPA violations be given preclusive effect with regard to their claim under section 523(a)(4) can be quickly and easily disposed of. Under section 523(a)(4), a debt for "fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny" may not be discharged. 11 U.S.C. § 523(a)(4). Here, a crucial element is missing from both the Plaintiffs' pleadings and from the arbitration award. A claim of non-dischargeability under section 523(a)(4) for fraud or defalcation while acting in a fiduciary capacity requires a showing of a pre-existing fiduciary relationship. *In re McMullen*, 2004 Bankr. LEXIS 2558, at *29 (N.D. Tex. July 15, 2004). The Fifth Circuit has concluded that, for purposes of section 523(a)(4), the fiduciary relationship must arise out of an express or technical trust. *In re Miller*, 156 F. 3d 598, 602 (5th Cir. 1998) (citing *Texas Lottery Comm'n v. Tran*, 151 F.3d 339, 342 (5th Cir. 1998)). In their state court action the Plaintiffs did not allege, nor did the arbitrator conclude, that the Debtor owed the Plaintiffs any fiduciary duties. Thus, the arbitrator's award has no preclusive effect with respect to the Plaintiffs' § 523(a)(4) claim. Summary judgment on that claim is therefore inappropriate, and is here denied.

Similarly, the Plaintiffs' argument that their state court DTPA judgment should be applied to collaterally estop the Debtor from litigating the Plaintiffs' claim of non-dischargeability under section 523(a)(6) can also be disposed of quickly. Under section

523(a)(6) "[a] cause of action for willful and malicious injury will also be excepted from discharge." *Bairrington*, 183 B.R. at 758. An injury will be deemed malicious "if it was wrongful and without just cause or excuse, even in the absence of personal hatred, spite or ill will." *Id.* The word "willful" in section 523(a)(6) "modifies the word 'injury,' indicating that nondischargeability takes a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury." *Kawaauahu v. Geiger*, 523 U.S. 57, 61 (1998). In *Kawaauahu*, the Supreme Court distinguished intentional torts–which the Court noted "generally require that the actor intend 'the consequences of an act,' not simply 'the act itself'"–from negligent or reckless torts, and concluded that "debts arising from recklessly or negligently inflicted injuries do not fall within the compass of § 523(a) (6)." *Id.* at 61-64. The Fifth Circuit has articulated the Supreme Court's test as follows: "[t]he test for willful and malicious injury under § 523(a)(6), [] is condensed into a single inquiry of whether there exists 'either an objective substantial certainty of harm or a subjective motive to cause harm' on the part of the debtor." *Berry v. Vollbracht (In re Vollbracht)*, 276 Fed. Appx. 360, 361 (5th Cir. 2007).  The Plaintiffs did not allege in their state court complaint, and the arbitrator did not find, either a subjective substantial certainty of harm or that the Debtor subjectively intended to cause harm to the Plaintiffs. A finding that the Debtor acted intentionally under the DTPA "does not lead to the conclusion that the state court determined that [the debtor] deliberately or intentionally acted to cause harm or injury as required under § 523(a)(6)." *Kuhn v. Driver (In re Driver)*, 305 B.R. 266, 270 (Bankr. N.D. Tex. 2003); *see also Bairrington*, 183 B.R. at 761 (concluding that collateral estoppel could not be applied because the elements of a deceptive trade practice or deceptive act alone are not identical to the elements needed

to establish a willful and malicious act under section 523(a)(6)). Accordingly, the arbitrator's award cannot be given preclusive effect with respect to the Plaintiffs' 523(a)(6) claim. Summary judgment on that claim is therefore inappropriate as well and is here denied.

A separate order consistent with this decision will be entered.

*# # #*